Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit 1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 11 December 1992, an employment relationship existed between plaintiff and defendant Westpoint Stevens.
3. On 11 December 1992, defendant Westpoint Stevens was self-insured with Constitution State Service Company as the servicing agent.
4. On 11 December 1992, plaintiff's average weekly wage was $323.60 yielding a compensation rate of $215.74 per week.
5. On 11 December 1992, plaintiff sustained a compensable injury to his right arm arising out of and in the course of his employment with defendant Westpoint Stevens, Inc. This claim was the subject of an Opinion and Award filed 9 January 1997 by Deputy Commissioner Phillip A. Holmes, of which the Full Commission takes Judicial Notice and is incorporated in its entirety herein. Additionally, the transcript of that hearing before Deputy Commissioner Holmes and the medical deposition of Dr. Paul Rush conducted on 20 September 1996 are included as a part of the record for this Opinion and Award.
6. On 27 May 1998, an employment relationship existed between plaintiff and defendant-employer American Defender Services.
7. On 27 May 1998, Liberty Mutual Insurance Company was the carrier at risk with respect to defendant-employer American Defender Services.
8. Plaintiff's average weekly wage on 27 May 1998 will be determined by an Industrial Commission Form 22, admitted into evidence as Stipulated Exhibit 4.
9. Plaintiff's medicals with regard to this claim are admitted into evidence as Stipulated Exhibit 2.
10. Plaintiff's 9 October 1998 Recorded Statement is admitted into evidence as Stipulated Exhibit 3.
11. Plaintiff's Employment Security Commission records, received following the hearing before the Deputy Commissioner, are admitted into evidence.
12. The Full Commission takes Judicial Notice of the Industrial Commission Forms 28B and 33 filed with respect to this case.
13. The depositions of Dr. Paul Rush conducted 10 September 1999, and Dr. Mark Brenner conducted 4 May 2000, are admitted into evidence.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained in the depositions of Dr. Paul Rush and Dr. Mark Brenner are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence in the record and reasonable inferences drawn therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 11 December 1992, plaintiff was a 31 year old male employed by defendant Westpoint Stevens as a lift truck operator. On that date, plaintiff sustained a compensable injury to his right arm when the power steering of the lift truck failed to operate properly causing plaintiff to jerk his right arm. As a result of this accident, plaintiff sustained a torn rotator cuff.
2. On 19 January 1995, plaintiff underwent an open right rotator cuff repair with open anterior inferior acromioplasty, performed by Dr. Paul Rush.
3. As a result of plaintiff's 11 December 1992 injury by accident, plaintiff received temporary total disability from 19 January 1995 through 2 May 1995, pursuant to the Opinion and Award filed 9 January 1997 by Deputy Commissioner Phillip A. Holmes. Plaintiff also retained an 8% permanent partial disability to his right arm which he received from defendant Westpoint Stevens pursuant to the same Opinion and Award.
4. Plaintiff returned to work for defendant Westpoint Stevens on 2 May 1995, as a lift truck operator earning the same or greater wages than he had earned prior to 11 December 1992. Plaintiff remained employed in that capacity until he was terminated on 10 December 1996 for a positive random drug test, which was unrelated to his compensable injury.
5. From 2 May 1995 through 10 December 1996 plaintiff performed his regular duties with defendant Westpoint Stevens but still suffered from burning and aching in his right shoulder with increased activity. Plaintiff is right-hand dominant.
6. Plaintiff sought additional treatment from Dr. Paul Rush on 20 July 1995 and 14 September 1995. Dr. Rush treated plaintiff with anti-inflammatories for the aching pain. At that time plaintiff had good range of motion.
7. Plaintiff found employment with Asplundh Tree Company as a flagman in January 1997, after his discharge from defendant Westpoint Stevens in December 1996. Plaintiff's duties included holding a stop sign and flagging traffic. These duties did not require plaintiff to move his right arm to any extent, but plaintiff continued to suffer the same shoulder discomfort and neck soreness he had experienced the latter part of 1995. In December 1997, plaintiff was laid off from his position with Asplundh Tree Company.
8. On 16 March 1998, plaintiff became employed with defendant-employer American Defender Services as a can kruncher operator at the Campbell Soup Company in Maxton, North Carolina. At that time defendant-employer Defender Services was under contract with Campbell Soup to supply labor. Campbell Soup maintained the kruncher machine which was a prototype, and Campbell Soup had a patent on its design and operation.
9. The job duties of a kruncher operator are to retrieve damaged/defective goods with a forklift and load them onto a pallet. The cases of product are then placed on a pallet beside the recycling dumpster. Plaintiff would unwrap the damaged goods and break the cases away from the product and wrap and drop the cans down into a dumpster. Once the dumpster was full, plaintiff utilized a forklift to dump the dumpster into the hopper. On occasion, plaintiff would have to go up on a six-foot high platform and use a ten-pound pole to move the cans around the hopper to avoid clogging the kruncher.
10. As a can kruncher operator, plaintiff was required to lift various weights and sizes of cans. The weight of each can was between eleven to nineteen ounces. Cases ranged from 12 to 24 cans per case. Each pallet contained eight cases on an average. Plaintiff normally destroyed three to four pallets of damaged products per day.
11. Although plaintiff worked eight hours per day, the can kruncher machine was only in operation for four hours per day. Plaintiff's additional time each day was spent sweeping or hosing down the waste dock.
12. Between 16 March 1998 and 19 May 1998, plaintiff began experiencing burning and soreness in his shoulder. On 19 May 1998, plaintiff's pain progressed, and he was out of work until he saw Dr. Paul Rush on 27 May 1998.
13. On 27 May 1998 Dr. Rush treated plaintiff with a cortisone shot. The shot originally numbed plaintiff's shoulder, but by afternoon the pain was worse and his shoulder began to stiffen. Dr. Rush's visit was paid for by defendant Westpoint Stevens. Dr. Rush diagnosed acromioclavicular joint inflammation of the right shoulder.
14. Plaintiff did not sustain any new accident at defendant-employer American Defender Services in May 1998 and performed his regular duties in the normal manner. When plaintiff was unable to return to work after seeing Dr. Rush on 27 May 1998, he was fired by defendant-employer American Defender Services.
15. Plaintiff again sought treatment from Dr. Rush on 22 June 1998. On that date plaintiff was still having severe pain over the acromioclavicular joint, and examination revealed possible inflammation of the tendon or muscle at the rotator cuff. Dr. Rush recommended an MRI to make sure plaintiff had not re-torn his rotator cuff or suffered some other new injury. The MRI was denied by defendant Westpoint Stevens, and this was plaintiff's last treatment with Dr. Rush.
16. On 24 September 1998, plaintiff saw Dr. Mark Brenner of Pinehurst Surgical Clinic upon attorney referral when defendant Westpoint Stevens refused to authorize further treatment. Upon examination plaintiff had a full range of motion with his right arm but had pain with internal and external rotation. Dr. Brenner diagnosed residual rotator cuff tendonitis and some associated subacromial bursitis, and recommended an MRI.
17. An MRI was performed 27 September 1998, and suggested mild tendinopathy and possible post-operative changes. Nerve conduction studies were within normal limits.
18. Plaintiff saw Dr. Brenner again on 22 October 1998, and had significant discomfort. An exploration and arthroscopy were recommended.
19. On 24 March 1999, Dr. Brenner performed an arthroscopy on plaintiff's right shoulder. Surgery revealed plaintiff had adhesions (scar tissue) in the subacromial space. Plaintiff did not have a tear at the rotator cuff, but he did have some non-absorbable suture material in the subacromial space.
20. Plaintiff followed up with Dr. Brenner in April 1999, and his pain improved after surgery. The adhesions and non-absorbable suture material contributed to plaintiff's increased pain over time and constituted a change of condition. There was no evidence of a new injury.
21. The greater weight of the medical evidence is that plaintiff did not sustain a new injury on or about 19 May 1998, nor did plaintiff's job duties at defendant-employer American Defender Services materially aggravate plaintiff's pre-existing condition, or cause or place plaintiff at an increased risk of shoulder pain. The dumpster at defendant-employer American Defender Services was approximately three feet high, and plaintiff's job duties there did not involve a great deal of overhead lifting. Plaintiff received assistance from fellow employees approximately three to four times per week if overhead lifting was necessary.
22. During plaintiff's treatment with Dr. Brenner, plaintiff was restricted from 24 September 1998 through 24 March 1999, to avoid overhead lifting and repetitive overhead use of his right arm.
23. From the date of surgery on 24 March 1999 and for twelve weeks thereafter, plaintiff had restricted use of his right arm. Effective 15 June 1999, plaintiff was capable of returning to full time employment without restrictions.
24. Plaintiff reached maximum medical improvement approximately six months following his 24 March 1999 surgery. At that time he retained a 12% permanent partial impairment, which was an increase of 4% over the previous 8% permanent partial disability rating for which he had received compensation.
25. Following his termination from defendant-employer American Defender Services, plaintiff filed for and was ultimately approved for unemployment benefits. However, plaintiff declined benefits because he was unable to certify he was ready, willing, and able to work.
26. Due to plaintiff's inability to afford medical treatment, plaintiff sought and obtained assistance from the North Carolina Department of Vocational Rehabilitation. At the time of hearing before the Deputy Commissioner, plaintiff was still unemployed and was receiving assistance with regard to job searches and/or payment of his medical expenses.
27. The greater weight of the evidence is that plaintiff suffered a change of condition on or about 19 May 1998 from his 11 December 1992 compensable injury. After his return to work following his 19 January 1995 surgery, plaintiff experienced increasing pain until he was no longer able to work or earn wages, effective 19 May 1998. Plaintiff's incapacity to work after 19 May 1998 was due to his 11 December 1992 compensable injury and pain from scar tissue and non-absorbable suture material following his 19 January 1995 surgery.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff's May 1998 disabling right shoulder condition was not caused by a new injury by accident while employed with defendant-employer American Defender Services. N.C. Gen. Stat. § 97-2(6)
2. In May 1998 plaintiff's right shoulder condition was not due to causes and conditions characteristic of and peculiar to his employment with defendant-employer American Defender Services and is not an ordinary disease of life to which the general public is equally exposed, and is, therefore, not an occupational disease within the meaning of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff's shoulder condition was not materially aggravated by plaintiff's employment duties with defendant-employer American Defender Services and those duties do not constitute "last injurious exposure" within the meaning of N.C. Gen. Stat. § 97-57.
4. On or about 19 May 1998, plaintiff experienced a substantial change of condition from his 11 December 1992 compensable injury in that his increased pain resulting from scar tissue and non-absorbable suture material following his 19 January 1995 surgery caused him to become unable to earn wages. N.C. Gen. Stat. § 97-47.
5. As a result of this change of condition on 19 May 1998, plaintiff is entitled to temporary total disability compensation from 19 May 1998 through 15 June 1999 at his compensation rate of $215.74 per week. N.C. Gen. Stat. § 97-29.
6 As a result of his 19 May 1998 change of condition, plaintiff is entitled to permanent partial disability for 9.6 weeks at his compensation rate of $215.74 per week, as a result of the additional 4% rating to his right arm. N.C. Gen. Stat. § 97-31 (13).
7. Plaintiff is entitled to have defendant-employer Westpoint Stevens provide all medical treatment arising from his 11 December 1992 injury by accident and 19 May 1998 change of condition to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Westpoint Stevens shall pay to plaintiff temporary total disability benefits at a compensation rate of $215.74 per week from 19 May 1998 through 15 June 1999. Said amount has accrued and shall be payable in a lump sum, subject to an attorney fee approved below.
2. Defendant Westpoint Stevens shall pay to plaintiff permanent partial disability benefits for 9.6 weeks at a compensation rate of $215.74 per week. Said amount shall be payable in a lump sum and subject to an attorney fee approved below.
3. Defendant Westpoint Stevens shall pay all medical expenses incurred by plaintiff as a result of the 11 December 1992 compensable injury and the 19 May 1998 change of condition, for so long as such examinations, evaluations and treatments may be reasonably necessary to effect a cure, give relief or tend to lessen plaintiff's period of disability, when bills for the same shall have been submitted to the Commission in accordance with North Carolina Industrial Commission procedure.
4. A reasonable attorney's fee of 25% of the compensation due plaintiffs under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be deducted from those sums and payable directly to plaintiff's counsel.
5. Defendants American Defender Services and Liberty Mutual Insurance Company are hereby DISMISSED as parties.
6. Defendant Westpoint Stevens, Inc. shall pay the costs.
 ***********
This the ___ day of November, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN